UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PALISADES ESTATES EOM, LLC, NEWBURGH EOM LLC d/b/a CROSSROADS HOTEL, RATAN NEWBURGH LLC d/b/a RAMADA by WYNDHAM, SOUTH ROAD HOSPITALITY, LLC, HUDSON CONFERENCE CENTER, LLC, ROUTE 9 HOTEL LLC, SAI RAM MANAGEMENT LLC, SANDIP PATEL, and RAPID RELIABLE TESTING NY LLC, | Case No. |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| COUNTY OF ROCKLAND, New York, EDWIN J. DAY, in his official capacity as County Executive of Rockland County, TOWN OF ORANGETOWN, New York, TERESA M. KENNY, in her official capacity as Town Supervisor of the Town of Orangetown, COUNTY OF ORANGE, New York, STEVEN M. NEUHAUS, in his official capacity as County Executive of Orange County, TOWN OF NEWBURGH, New York, and GILBERT J. PIAQUADIO, in his official capacity as Town Supervisor of the Town of Newburgh, COUNTY OF DUTCHESS, New York, WILLIAM F.X. O'NEIL, in his official capacity as County Executive of Dutchess County, DUTCHESS COUNTY DEPARTMENT OF COMMUNITY AND FAMILY SERVICES, SABRINA J. MARZOUKA, in her official capacity as Commissioner of Dutchess County Department of Family Services, Town of Poughkeepsie, COUNTY OF RENSSELAER, New York, COUNTY OF HERKIMER, New York, COUNTY OF ONEIDA, New York, COUNTY OF BROOME, New York, COUNTY OF GENESEE, New York, COUNTY OF ORLEANS, New York, COUNTY OF SARATOGA, New York, COUNTY OF GREENE, New York, COUNTY OF SULLIVAN, New York, and John Doe Counties and Municipalities 1-20, | |
| Defendants. | |

Plaintiffs Palisades Estates EOM, LLC ("Armoni"), Newburgh EOM LLC d/b/a

Crossroads Hotel, ("Crossroads,"), Ratan Newburgh LLC d/b/a Ramada by Wyndham

("Ramada"), South Road Hospitality, LLC ("South Road"), Hudson Conference Center, LLC

("Hudson Conference"), Route 9 Hotel LLC ("Route 9"), Sai Ram Management LLC ("Sai Ram"), Sandip Patel ("Patel"), and Rapid Reliable Testing NY LLC ("RRT") (Armoni, Crossroads Ramada, South Road, Hudson Conference, Route 9, Sai Ram and Patel, collectively, the "Plaintiff Hotels", and with RRT collectively the "Plaintiffs")) hereby bring this Complaint against Defendants County of Rockland, New York, and Edwin J. Day, in his official capacity as County Executive of Rockland County (together, "Rockland County"), County of Orange, New York, and Steven M. Neuhaus, in his official capacity as County Executive of Orange County ("Orange County"), the Town of Orangetown, New York, and Teresa M. Kenny, in her official capacity as Town Supervisor of the Town of Orangetown (together "Orangetown"), the Town of Newburgh, New York, Gilbert J. Piaquadio, in his official capacity as Town Supervisor of the Town of Newburgh (together, "Newburgh"), County of Dutchess, New York, William F.X. O'Neil, in his official capacity as County Executive of Dutchess County, Dutchess Department of Community and Family Services, Sabrina J. Marzouka, in her official capacity as Commissioner of the Dutchess County Department of Family Services (together, "Dutchess County"), Town of Poughkeepsie ("Poughkeepsie"), County of Rensselaer, New York ("Rensselaer County"), County of Herkimer, New York ("Herkimer County"), County of Oneida, New York ("Oneida County"), County of Broome, New York ("Broome County"), County of Genesee, New York ("Genesee County"), County of Orleans, New York ("Orleans County"), County of Saratoga, New York ("Saratoga County"), County of Greene, New York ("Greene County"), County of Sullivan, New York ("Sullivan County," and together with Rockland County, Orange County, Dutchess County, Rensselaer County, Herkimer County, Oneida County, Broome County, Genesee County, Orleans County, Saratoga County, and Greene County, the "Counties," and together with Orangetown and

Newburgh, "Defendants"), and against John Doe Counties and Municipalities 1-20 additional unnamed Counties in New York and State Actors, allege upon information and belief as follows:

<u>**NATURE OF ACTION**</u>

1.      The Counties have issued executive orders (the "Executive Orders") and taken other actions through their County Executives and municipalities therein (including the towns of Orangetown and Newburgh) that unlawfully, impermissibly, and unconstitutionally prohibit -- both on their face, and as applied through the selective and pretextual enforcement of local laws -- Plaintiffs from fulfilling their agreements to transport and offer temporary lodging in public accommodations located in the Counties to migrant refugees in the United States ("Asylum Refugees"). A copy of the Rockland County Executive Order is annexed hereto as **Exhibit A;** and a copy of the Orange County Executive Order is annexed hereto as **Exhibit B**. Copies of the Executive Orders issued by the remaining Counties are collectively annexed hereto as **Exhibit C**.

2.      Catering to xenophobic and political interests, Defendants took swift action to reprimand Plaintiffs for agreeing to arrange rooms at hotels for the Asylum Refugees. In an effort to punish Plaintiffs and to intimidate others similarly inclined, Defendants have exceeded their power and authority and have targeted and retaliated against Plaintiffs for helping people in need.

3.      Defendants have made clear their reasons are not noble, but are unlawful and reek of discrimination. Supporting his executive order, County Executive Day, without any basis, said of the Asylum Refugees: "[W]e have child rapists, we have criminals, we have MS-13[.]" *See* https://nypost.com/2023/05/07/rockland-county-exec-warns-cops-are-deployed-if-nyc-tries-to-bus-migrants-there/.

4.      As a result, Plaintiffs, who have agreed to furnish Asylum Refugees with hotel rooms and essential services, are being aggressively targeted by Defendants with a simple

message: if you provide hotel rooms to Asylum Refugees, Defendants will prevent performance of your agreements and destroy your businesses, all in flagrant violation of your Constitutional rights.

5.      Indeed, in an effort to sway political opinion and draw national attention, County Executive Neuhaus spread a false narrative on national television to the effect that Crossroads evicted homeless veterans in order to accommodate the Asylum Refugees, leading to harassment and even death threats against the Crossroads and its staff.

6.      Although this story has since been found to be completely fabricated, Mr. Neuhaus has not felt the need to correct his own libelous statements.

7.      In the months preceding October 2022, nearly 20,000 Asylum Refugees arrived in New York City in need of housing and other services. Busloads of Asylum Refugees arrived at the Port Authority Bus Terminal at unpredictable hours and in need of basic services and shelter without prior coordination or consultation with New York City. This rapid influx has deeply taxed New York City, which currently hosts roughly 79,000 Asylum Refugees. *See* NYC Department of Homeless Services, Daily Report (May 11, 2023), *available at* https://perma.cc/J44R-E8WF.

8.      In October 2022, Mayor Eric Adams declared New York City was in a state of emergency, and New York City undertook to establish and operate temporary humanitarian relief centers, known as HERRCs (Humanitarian Emergency Response and Relief Centers) to provide emergency assistance for arriving Asylum Refugees by immediately offering temporary shelter, food, and medical care.

9.      However, New York City's capacity to provide temporary shelter – including in private hotels agreeing to rent rooms to Asylum Refugees – became strained as the number of people seeking shelter continues to rise to the highest level in recorded history.

10.     As Asylum Refugees have continued to enter the City, the state of emergency has deepened. *See* Emergency Executive Order 402 (May 10, 2023), https://perma.cc/FJ 5J -LXF9 (captured May 12, 2023).

11.     In recognition that this humanitarian crisis has now become a statewide concern, on May 6, 2023, Governor Hochul declared a State Disaster Emergency. In doing so, the Governor noted that New York City was currently providing temporary shelter to nearly 40,000 Asylum Refugees.

12.     Pursuant to a contract with the City of New York, Plaintiff RRTprovides Asylum Refugees with a suite of services, including health care, social services, transportation, shelter, and food.

13.     Pursuant to its lawful contractual obligations with New York City, RRT was engaged to identify hotels near New York City that would provide hotel rooms to provide temporary lodging to Asylum Refugees.

14.     As part of this arrangement, RRT is also responsible to ensure the Asylum Refugees placed in hotel rooms would have access to ordinary and essential services, from food to laundry to security to medical care and social services. The hotel rooms and services provided to the Asylum Refugees are paid for by New York City.

15.     The hotels owned by the Hotel Plaintiffs are among some of the hotels that have agreed to rent hotel rooms to RRT to provide temporary lodging to the Asylum Refugees.

16.     In immediate response, and in an effort to bully Plaintiffs into agreeing to no longer work with New York City, Defendants Rockland County and the Town of Orangetown commenced separate actions in the New York Supreme Court, Rockland County, and obtained a

TRO enjoining Plaintiffs from transporting and/or housing any Asylum Refugees in or to any hotel or public accommodation in Rockland County.

17.    In addition, Rockland County has wrongfully refused to grant Armoni a renewed temporary residence permit in furtherance of the unconstitutional goals set forth in the Executive Orders.  A copy of Rockland County's letter dated May 9, 2023, is annexed hereto as **Exhibit D.**

18.    Similarly, Defendants Orange County and Newburgh have commenced three separate civil actions in the New York Supreme Court, Orange County, seeking injunctive relief not merely to prohibit the Plaintiffs from transporting and temporarily housing the Asylum Refugees, but seeking mandatory injunctive relief to forcibly remove and ship the Asylum Refugees, who are already present in the United States and in Orange County, back to New York City.  In the interim, the Supreme Court of Orange County has issued temporary restraining orders prohibiting any additional Asylum Refugees from being provided temporary lodging on Orange County.

19.    Thereafter, on May 19, 2023, Defendants Dutchess County and Poughkeepsie initiated separate civil actions in New York Supreme Court, County of Dutchess, seeking similar injunctive relief aimed at prohibiting the provision of temporary lodging in Dutchess County and Poughkeepsie, respectively.

20.    The Defendants are actively using (or intend to use) the state court apparatus to enforce the Executive Orders in furtherance of an unconstitutional scheme.

## **THE EXECUTIVE ORDERS ARE FACIALLY UNCONSTITUTIONAL**

21.     Defendants are State actors that have unconstitutionally interfered with Plaintiffs' rights under the Contracts Clause of the United States Constitution (the "Constitution") by passing laws through County Executive Orders that impermissibly impair the obligation of contracts.

22.     Article 1, section 10, cl. 1 of the Constitution provides, *inter alia*, that "No State shall….pass any ….Law impairing the Obligation of Contracts…"

23.     Further, the Executive Orders are unconstitutional, both on their face and as applied, under the Due Process Clause of the 14th Amendment to the Constitution as they unlawfully prohibit Plaintiffs from transporting and providing temporary lodging to the Asylum Refugees in emergency need of public accommodations anywhere in the Counties.

24.     Moreover, by passing the Executive Orders and selectively enforcing zoning laws solely on the basis of the status of Asylum Refugees, Defendants have violated the Equal Protection Clause of the 14th Amendment.

25.     Critically, the Executive Orders on their face are directed at restricting the ability of the Asylum Refugees to seek transport and temporary housing within the Counties, including requirements in several of the Executive Orders that any entity seeking to provide temporary public accommodations seek a special license (which, of course, the Counties have not granted and never intend to grant).

26.     In doing so, the Executive Orders improperly conflict with the federal government's preeminence over any restrictions on the availability of housing and lodging for immigrants.

27.     Although the Executive County Orders are unconstitutional on their face, on May 12, 2023, the Rockland County Supreme Court granted Rockland County's request for a TRO

enforcing the Rockland County Executive Order prohibiting Plaintiffs Armoni[1] and RRT from transporting or providing temporary lodging to any Asylum Refugees in Rockland County. A copy of the Rockland County TRO is annexed hereto **as Exhibit E.**

28.    Similarly, on May 16, 2023, the Orange County Supreme Court granted Orange County's and the Town of Newburgh's respective requests for a TRO, ordering Plaintiffs Crossroads, Ramada and RRT from providing temporary lodging to any additional Asylum Refugees or "altering the use" of these hotels (which, according to Defendants, would include using the hotels in the manner they are currently being used).

## THE COUNTY EXECUTIVE ORDERS ARE UNCONSTITUTIONAL AS APPLIED

29.    The County Executive Orders are not only unconstitutional on their face, but also unconstitutional as applied.

30.    In furtherance of the unlawful policy objections both expressly and implicitly set forth in the Executive Orders of the Counties, local townships within the Counties have begun to selectively target Plaintiffs and pretextually apply local laws and ordinances, such as zoning and building codes, to accomplish and further the unconstitutional policies set forth in the Executive Orders. *See* **Exhibit F, (the "Orangetown Complaint").**

31.    The Orangetown Complaint – brought against Armoni – openly and expressly relies upon the unlawful Executive Order issued by Rockland County, stating that the Armoni is being used unlawfully because it does not comply with the Rockland County Executive Order.

32.    In the same vein, Rockland County is using its licensing authority to withhold a temporary residence permit – which Armoni requires in order to operate – solely because Armoni

---

[1] Plaintiff Armoni, as well as the other Hotel Plaintiffs, are not involved with the transportation of the Asylum Refugees, which is handled by RRT.

has an agreement to, in the future, rent rooms its hotel to temporarily accommodate the Asylum Refugees.

33.    In addition, Newburgh and Orange County are selectively targeting participating hotels, including Crossroads and Ramada, pretextually relying on Newburgh's local zoning and building codes to prohibit Plaintiffs from transporting and providing temporary lodging to the Asylum Refugees in otherwise public accommodations by expressly relying upon the unlawful policy set forth in the unconstitutional Orange County Executive Order. See complaint filed by Newburgh in the Supreme Court, Orange County (the "Newburgh Complaint", a copy of which is annexed hereto as **Exhibit G**).

34.    For example, Paragraph 23 of the Newburgh Complaint cites to the Orange County Executive Order in furtherance of applying local zoning and municipal codes to achieve this unconstitutionally impermissible purpose.

35.    The same legal theories have been asserted by Poughkeepsie and Dutchess County in their respective actions, and are expected to be asserted by the remainder of the Counties.

36.    Each of these acts is plainly unconstitutional, driven by one simple factor: the Asylum Refugees' immigration statuses and nationalities.

37.    Asylum Refugees, largely from Latin American countries, have been entering the United States through its southern border and, upon information and belief, are unable to return to their country of national origin.

38.    A refugee has been defined by Congress as "[a]ny person who is outside any country of such person's nationality ... who is unable or unwilling to return to, and is unable or unwilling to avail himself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular

social group, or political opinion." *see*, Immigration and Nationality Act of 2016, 8 U.S.C. § 1101(a)(42).

39.     The Asylum Refugees are lawfully present in the United States. *See, e.g.*, *Immigration Services v. Petit*, 393 F. Supp. 3d 728, 730-31 (S.D. Ohio 2019) (noting that under federal law, those who have "lawful status" include "aliens who have …entered into the United States in refugee status").

40.     The case of *Lozano v. City of Hazleton*, 724 F.3d 297, 315-17 (3d Cir. 2013) ("States and localities have no power" to enact or enforce regulations which conflict with federal law concerning restrictions on the ability to provide housing of aliens in the United States) is instructive.

41.     In *Lozano,* the Third Circuit "concluded that the housing provisions are conflict pre-empted by the INA. That statute [The Immigration and Nationality Act of 2106] is centrally concerned with 'the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully admitted.'" *Id.* (quoting *De Canas,* 424 U.S. 351, 359 (1976)). The INA's comprehensive scheme "plainly precludes state efforts, whether harmonious or conflicting, to regulate residence in this country based on immigration status.

42.     Since the decision in *Lozano II,* "a number of courts have concluded that state or local laws proscribing the harboring of aliens lacking lawful status" are unenforceable. *Id.* at 316 (citing *Ga. Latino Alliance for Human Rights v. Governor of Ga.,* 691 F.3d 1250, 1263–65 (11th Cir.2012) ("*GLAHR*"); *United States v. Alabama,* 691 F.3d 1269, 1285–87 (11th Cir.2012), *cert. denied,* 569 U.S. 968 (2013); *United States v. South Carolina,* 906 F. Supp. 2d 463, 468 (D.S.C. 2012), *aff'd*, 720 F.3d 518 (4th Cir. July 23, 2013); *Valle del Sol v. Whiting,* No. 10–1061-PHX-SRB, 2012 WL 8021265, at *5 (D.Ariz. Sept. 5, 2012).)

43.     The Supremacy Clause of the U.S. Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2.

44.     Thus, a state enactment is invalid if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]" *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

45.     The County Executive Orders violate the Supremacy Clause and are preempted because, *inter alia*, they infringe on the federal government's to regulate the presence or housing of aliens in the United States.

46.     Moreover, the Executive Orders, both on their face and as applied by local zoning ordinances, impermissibly target and selectively prosecute the Plaintiff Hotels and Plaintiff RRT by restraining and prohibiting them from providing temporary housing and transportation and travel to and from public accommodations on the basis of the immigration status of Plaintiffs' charges and clients.

47.     Defendants' Executive Orders and local actions selectively target and enforce the Executive Orders and local laws in violation of Plaintiffs' due process and equal protection rights under the Fourteenth Amendment of the United States Constitution; and Defendants' Executive Orders and enforcement thereof further prohibit and restrain Plaintiffs from transporting and temporarily housing in public hotels persons in the United States solely on the basis of their immigration status. That is unlawful. *See Dandamudi v. Tisch*, 686 F.3d 66, 74 (2d Cir. 2012) ("On appeal, New York asks us to abrogate the Supreme Court's general rule that state statutes that discriminate based on alienage are subject to strict scrutiny review. The state argues that the statute

at issue here, which discriminates against nonimmigrant aliens should be reviewed only to determine if there is a rational basis that supports it. In our view, however, a state statute that discriminates against aliens who have been lawfully admitted to reside and work in the United States should be viewed in the same light under the Equal Protection Clause as one which discriminates against aliens who enjoy the right to reside here permanently. Applying strict scrutiny, therefore, and finding, as the state concedes, that there are no compelling reasons for the statute's discrimination based on alienage, we hold the New York statute to be unconstitutional. We affirm the district court's grant of summary judgment for plaintiffs … Thus, statutes that deny opportunities or benefits to aliens are subject to strict scrutiny unless they fall within two narrow exceptions" - exclusions related to political and government functions, and matters directed at undocumented aliens.")

48.    The Executive Orders further violate, and are preempted by, New York Executive Law § 296(2)(a) which prohibits, *inter alia*, discrimination by any place of public accommodation against any person because of their "national origin, citizenship, or immigration status[.]"

49.    Plaintiffs – who have either contracted with the City of New York to identify and place the Asylum Refugees in hotel rooms or agreed to let their hotel rooms to temporarily accommodate the Asylum Refugees – therefore seek a declaration that the Executive Orders and any selective enforcement of any other laws, such as local zoning codes, are invalid, and an injunction against their enforcement.

## **THE PARTIES**

50.    Plaintiff Armoni is a limited liability company organized under the laws of the State of New York with a principal place of business at 329 Route 303, Orangeburg, New York. Armoni is the owner of the Hotel known as Armoni Inn & Suites.

51.     Plaintiff Crossroads is a limited liability company organized under the laws of the State of New York with a principal place of business at 5 Lakeside Drive, Newburgh, New York. Crossroads is the owner of the Hotel known as the Crossroads Hotel.

52.     Plaintiff Ramada is a limited lability company which owns and/or operates a hotel in Newburgh, New York.

53.     Plaintiff South Road is a limited liability company organized under the laws of the State of New York with a principal place of business at 2349 South Road, Poughkeepsie, New York.

54.     Plaintiff Hudson Conference is a limited liability company organized under the laws of the State of New York with a principal place of business at 2170 South Road, Poughkeepsie, New York.

55.     Plaintiff Route 9 is a limited liability company organized under the laws of the State of New York with a principal place of business at 2349 South Road, Poughkeepsie, New York.

56.     Plaintiff Sai Ram is a limited liability company organized under the laws of the State of New York with a principal place of business at 2170 South Road, Poughkeepsie, New York.

57.     Plaintiff Patel is an individual residing in the State of New Jersey.

58.     Plaintiff RRT is a limited liability company organized under the laws of the State of New York with a principal place of business at 35 West 35th Street, 6th Floor, New York, NY 10001.

59.     Upon information and belief, defendant County of Rockland is a municipal corporation organized under the laws of the State of New York, with a principal place of business at 11 New Hempstead Road, New City, New York.

60. Defendant Edwin J. Day is the County Executive of Defendant County of Rockland and is being sued in his official capacity.

61. Upon information and belief, defendant County of Orange is a municipal corporation organized under the laws of the State of New York, with a principal place of business at 255 Main Street, Goshen, New York.

62. Defendant Steven M. Neuhaus is the County Executive of Defendant County of Orange and is being sued in his official capacity.

63. Upon information and belief, defendant Orangetown is a municipal corporation organized under the laws of the State of New York, with a principal place of business at 26 Orangeburg Road, Orangeburg (Rockland County), New York.

64. Defendant Teresa M. Kenny is the Town Supervisor of Defendant Town of Orangetown, and is being sued in her official capacity.

65. Upon information and belief, defendant Town of Newburgh is a municipal corporation organized under the laws of the State of New York, with a principal place of business at 83 Broadway, Newburgh, New York.

66. Defendant Gilbert J. Piaquadio is the Town Supervisor of Defendant Town of Newburgh, and is being sued in his official capacity.

67. Upon information and belief, defendant County of Dutchess is a municipal corporation organized under the laws of the State of New York, with a principal place of business at 22 Market Street, Poughkeepsie, New York.

68. Defendant William F.X. O'Neil is the County Executive of Dutchess County, and is being sued in his official capacity.

69.    Upon information and belief, defendant Dutchess Department of Community and Family Services is a municipal corporation organized under the laws of the State of New York, with a principal place of business at 60 Market Street, Poughkeepsie, New York.

70.    Defendant Sabrina J. Marzouka, is the Commissioner of the Dutchess County Department of Family Services, and is being sued in her official capacity.

71.    Upon information and belief, defendant Poughkeepsie is a municipal corporation organized under the laws of the State of New York, with a principal place of business at 62 Civic Center Plaza, Poughkeepsie, New York.

72.    Upon information and belief, defendant County of Rensselaer is a municipal corporation organized under the laws of the State of New York, with a principal place of business at 99 Troy Road, East Greenbush, New York.

73.    Upon information and belief, defendant County of Herkimer is a municipal corporation organized under the laws of the State of New York, with a principal place of business at 109 Mary Street, Herkimer, New York.

74.    Upon information and belief, defendant County of Oneida is a municipal corporation organized under the laws of the State of New York, with a principal place of business at 800 Park Avenue, Utica, New York.

75.    Upon information and belief, defendant County of Broome is a municipal corporation organized under the laws of the State of New York, with a principal place of business at 60 Hawley Street, Binghamton, New York.

76.    Upon information and belief, defendant County of Genesee is a municipal corporation organized under the laws of the State of New York, with a principal place of business at 7 Main Street, Batavia, New York.

77.     Upon information and belief, defendant County of Orleans is a municipal corporation organized under the laws of the State of New York, with a principal place of business at 14016 Route 31 West, Albion, New York.

78.     Upon information and belief, defendant County of Saratoga Upon information and belief, defendant is a municipal corporation organized under the laws of the State of New York, with a principal place of business at 40 McMaster Street, Ballston Spa, New York.

79.     Upon information and belief, defendant County of Greene is a municipal corporation organized under the laws of the State of New York, with a principal place of business at 411 Main Street, Catskill, New York.

80.     Upon information and belief, defendant County of Sullivan is a municipal corporation organized under the laws of the State of New York, with a principal place of business at 100 North Street, Monticello, New York.

81.     Upon information and belief, Defendants John Doe Counties and Municipalities 1-20, include additional State Actors, including townships and counties in NY, which have made executive orders which violate Plaintiffs' rights under the U.S. Constitution and federal law but the identity of which have not yet become adequately known to Plaintiffs and for which Plaintiffs reserve their right to name and sue in this Action by way of amendment.

## JURISDICTION AND VENUE

82.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and Plaintiff seeks remedies under 28 U.S.C. §§ 1651, 2201 and 2202.

83.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), in that the claims arise in this judicial district, and because a substantial part of the acts or omissions giving rise to this action arose from events occurring within this juridical district.

## FACTUAL ALLEGATIONS

A.    **Asylum Refugees Enter the United States and Then Are Shipped to New York City**

    *1.*    *New York City Declares A State of Emergency*

84.    Asylum Refugees, largely from Latin American countries, have been entering the United States through its southern border in fear of persecution for themselves and their families.

85.    In 2022, the State of Texas began sending groups of Asylum Refugees to New York City.

86.    New York City has provided temporary shelters to Asylum Refugees through the City's Department of Homeless Services ("DHS") as well as private businesses such as RRT and the Hotels to transport and make temporary public accommodations available to the Asylum Refugees.

87.    On October 7, 2022, New York City Mayor Eric Adams issued Emergency Executive Order 224 ("EO 224"), declaring a State of Emergency in order to facilitate humanitarian temporary shelter for the large number of Asylum Refugees arriving in New York. A copy of EO 224 is attached hereto as **Exhibit H.**

88.    According to EO 224, as of October 4, 2022, the number of Asylum Refugees in New York City had already reached 17,429.

89.    In the ensuing months, the number of Asylum Refugees arriving in New York City ballooned, with over 60,800 Asylum Refugees arriving in New York City from the Spring of 2022 through date.

90.    On May 5, 2023, Mayor Adams announced a humanitarian plan to arrange temporary shelter for a small number of Asylum Refugees in nearby counties.

2.    *The Counties Improperly Issue The Executive Orders Unlawfully Prohibiting Plaintiffs From Performing Their Lawful Agreements To Transport And Providing Temporary Lodging To Asylum Refugees In All Public Accommodations Such As Hotels, Motels And All Short Term Rentals Located In The Respective Counties*

91.    In response to Mayor Adams' announcement, Rockland County on May 6, 2023 issued a broad Executive Order barring prohibiting anyone, whether municipalities, individuals or entities, from contracting or providing transportation or lodging to the Asylum Refugees without an express license from the County Executive and authorizing the Sheriff to make stops of persons – such as Plaintiffs – suspected of transporting or sheltering Asylum Refugees, issue tickets mandating court appearances and providing for civil penalties.

92.    Similarly, Orange County issued an Executive Order on May 8, 2023 expressly prohibiting Plaintiffs from transporting and renting to Asylum Refugees any and all rooms in all hotels, motels and all short term rentals located in the Counties.  The remaining County Defendants shortly followed suit, issuing similar executive orders.

93.    Each of the Executive Orders specifically targets and prohibits the lawful performance of lawful agreements by hotels and service providers such as RRT engaged in the transportation and providing temporary lodging in public accommodations to the Asylum Refugees.

94.    The Rockland County Order, by its plain terms, prohibits – exclusively – Plaintiffs' agreements for the transportation and provision of temporary lodging to "migrants or asylum seekers."

95.    The Rockland County Order does not prohibit any other agreement, nor any other class of persons engaged in such lawful contracting for lawful services.

96.    The Rockland County Order further proscribes penalties of $2,000 per Asylum Refugees sheltered by any hotel or public accommodation in the County.

97.     As with the Rockland County Order, the Orange County Order similarly facially violates Plaintiffs' rights under the U.S. Constitution by prohibiting "hotels, motels and/or any facilities allowing short-term rentals" from "accept[ing] … migrants and/or asylum seekers for housing within Orange County."

98.     Similar to the Rockland County Order, the Orange County Order does not target any other class of person other than parties such as Plaintiffs who have lawfully agreed to provide temporary lodging and transportation services to Aslyum Refugees.

99.     As part of its efforts to apply the unconstitutional Rockland Order and enforce the policy set forth therein, Defendant Orangetown brought legal action against Plaintiff Armoni in Rockland County Supreme Court on May 9, 2023 in support of an *ex parte* TRO. Plaintiff Armoni is one of the hotels which agreed to provide temporary lodging to a small number of the Asylum Refugees.

100.     As evidenced by Defendant Orangetown's Complaint, annexed as **Exhibit F**, Defendant Orangetown seeks to enforce the Rockland County Order by expressly relying upon and citing to it at paragraph 29 thereof.

101.     Defendant Orangetown's Complaint and corresponding zoning violations are not related to any lawful ordinary enforcement of zoning codes, but rather are impermissibly and selectively targeted at only Plaintiffs Hotels for the sole purpose of enforcing the Orange County's unlawful Executive Order.

102.     Similarly, as part of its efforts to apply the unconstitutional Rockland Order and enforce the policy set forth therein, Rockland County commenced its own action on May 10, 2023 against Plaintiff Armoni, among others defendants, and obtained a TRO prohibiting Plaintiffs from transporting for the purpose of renting, and prohibiting Plaintiffs from renting, any and all rooms

in all hotels, motels and all short term rentals located in Rockland County to Asylum Refugees. The TRO orders, in pertinent part, that:

> "Palisades Estates EOM LLC, and Armoni Inn & Suites LLC d/b/a Armoni Inn & Suites, through their agents, servants, representatives and employees are temporarily restrained and enjoined from transporting approximately 340 homeless adult individuals currently residing in a temporary shelter in New York City to the Armoni Inn & Suites Hotel situated in the County of Rockland."

**See Exhibit E**.

103.    Defendant Rockland County's Verified Petition and Complaint, dated May 9, 2023, at Paragraph 13 expressly relies on the Rockland Executive Order to prohibit providing temporary lodging to Asylum Refugees. *See* Rockland County Complaint at para. 13, annexed hereto as **Exhibit I.**

104.    Unsatisfied with two separate temporary restraining orders prohibiting Armoni from renting rooms to the Asylum Refugees, Rockland County went a step further, seeking to make an example out of Armoni, sending a message to other hotels in Rockland County.

105.    Rockland County denied Armoni a necessary temporary residence permit, and subsequently forced Armoni to close indefinitely, displacing ordinary hotel guests then staying at the Armoni (the "Closure Order").  In denying this, Rockland County gave one reason: Armoni's agreement to provide temporary accommodations to the Asylum Refugees.  At present, Armoni's hotel cannot be used for any purpose whatsoever and is monitored by on-site county law enforcement twenty four hours a day.

106.    Moreover, the County of Orange, together with the Town of Newburgh therein, have collectively commenced three separate actions each relying upon the constitutionally infirm Orange County Executive Order to (1) prohibit Plaintiffs from transporting for the purpose of renting, and renting, any and all rooms in all hotels, motels and all short term rentals located in

Orange County to Asylum Refugees; and (2) seeking a mandatory injunction to forcibly evict approximately 60 Asylum Refugees from Plaintiff Crossroads hotel and forcibly transport these Asylum Refugees back to NYC.

107.    As with Orangetown, Newburgh is seeking to effectuate the order issued by its County Executive.

108.    Thereafter, on May 19, 2023, Defendants Dutchess County and Poughkeepsie initiated separate civil actions in New York Supreme Court, County of Dutchess, seeking similar injunctive relief aimed at prohibiting the provision of temporary lodging in Dutchess County and Poughkeepsie, respectively.

109.    As each of the remaining County Defendants have issued executive orders similar to those issued by Rockland and Orange Counties – making it unlawful to transport and/or provide temporary lodging to the Asylum Refugees – it is expected that they, too, will institute similar actions seeking emergency injunctive relief in the immediate future.

## FIRST CAUSE OF ACTION
### (The Executive Orders Violate The Contracts Clause of the U.S. Constitution)

110.    Plaintiffs repeat and reallege the above allegations as if fully set forth herein.

111.    Article 1, section 10, cl. 1 of the United States Constitution provides, inter alia, that "No State shall….pass any ….Law impairing the Obligation of Contracts…"

112.    Plaintiffs have lawfully entered into lawful agreements.

113.    Defendants are state actors that have unconstitutionally interfered with and violated Plaintiffs' rights under the U.S. Constitution Contracts Clause by passing laws through County Executive Orders that impermissibly impair the obligation of contracts.

114.    Defendants' County Executive Orders are unconstitutional on their face, and as

applied.

115.     By reason of the foregoing, Plaintiffs have suffered traceable harm as a direct result of Defendants' Executive Orders, both facially and as applied.

116.     Plaintiffs are entitled to a Declaratory Judgment declaring that the County Executive Orders are unconstitutional on their face and as applied and therefore void.

117.     Plaintiffs have no adequate remedy at law.

118.     Plaintiffs are entitled to an injunction staying the Supreme Court Actions in Rockland and Orange Counties under 28 USC § 2283.

119.     Plaintiffs are entitled to an injunction enjoining the Counties from enforcing the Executive Orders.

## SECOND CAUSE OF ACTION
**(The Executive Orders and Selective Enforcement of Zoning Codes Violate the Supremacy Clause and Are Preempted Under Federal Law)**

120.     Plaintiffs repeat and reallege the above allegations as if fully set forth herein.

121.     Where the Executive Orders seek to regulate the Plaintiffs' rights to make and receive temporary housing or public accommodations concerning aliens, such as Asylum Refugees, they are preempted by federal law.

122.     Similarly, local laws and other regulations attempting to regulate and bar the harboring or housing of Asylum Refugees are preempted under the Supremacy Clause.

123.     Local authorities have no authority to interfere with the federal government's exclusive role in dictating restrictions on an alien's access to housing or public accommodations. Accordingly, by restricting Plaintiffs from providing available public accommodations to the Asylum Refugees, and prohibiting the Asylum Refugees from accepting such public accommodations, Defendants, by and through the Executive Orders, thereby violate Plaintiff's

rights under the Supremacy Clause and the U.S. Constitution.

124.    The Executive Orders purport to restrict both private and public entities from transporting and offering public accommodations to the Asylum Refugees.

125.    Thus, the Executive Orders, as well as Orangetown's, Newburgh's, and Poughkeepsie's selective and targeted enforcement of their zoning codes, violate the Supremacy Clause and the U.S. Constitution.

126.    Defendants' County Executive Orders and any disparate enforcement of local laws and ordinances are unconstitutional on their face, and as applied.

127.    By reason of the foregoing, Plaintiffs have suffered traceable harm as a direct result of Defendants' Executive Orders and disparate enforcement of local laws and ordinances, both facially and as applied.

128.    Plaintiffs are entitled to a Declaratory Judgment declaring that the County Executive Orders are unconstitutional on their face and as applied and are therefore void.

129.    Plaintiffs are further entitled to a Declaratory Judgment declaring Orangetown's, Newburgh's, and Poughkeepsie's selective and targeted enforcement of their zoning codes unconstitutional as applied.

130.    Plaintiffs have no adequate remedy at law.

131.    Plaintiffs are entitled to an injunction staying the Supreme Court Actions in Rockland and Orange Counties under 28 USC § 2283.

132.    Plaintiffs are entitled to an injunction enjoining the Counties from enforcing the Executive Orders, and enjoining the Counties, Orangetown, Newburgh and Poughkeepsie from selectively enforcing their respective local codes.

**THIRD CAUSE OF ACTION**
**(The Executive Orders and Selective Enforcement of Zoning Codes Violate The 14th
Amendment to the U.S. Constitution)**

133.    Plaintiffs repeat and reallege the above allegations as if fully set forth herein.

134.    For the reasons foregoing set forth above, the Executive Orders violate the due
process rights of Plaintiffs in violation of the 14th Amendment.

135.    Plaintiffs enjoy 14th Amendment due process rights to freely travel and transport
and house in public accommodations the Asylum Refugees.

136.    Plaintiffs enjoy 14th Amendment rights to Equal Protection under law. Plaintiffs'
equal protection rights include the right to provide public accommodations to all persons without
regard to nationality, alienage, race, creed, religion, or immigration status under federal law.

137.    Defendants' County Executive Orders are unconstitutional on their face, and as
applied.

138.    Moreover, Rockland County's, Orangetown's, Newburgh's, and Poughkeepsie's
selective and targeted enforcement of their local codes are unconstitutional as applied. This
includes Rockland County's issuance of the Closure Order, which is blatantly unlawful, forcing
the Armoni to shut down indefinitely.

139.    By reason of the foregoing, Plaintiffs have suffered traceable harm as a direct result
of Defendants' Executive Orders and disparate enforcement of local laws and ordinances, both
facially and as applied.

140.    Plaintiffs are entitled to a Declaratory Judgment declaring that the County
Executive Orders are unconstitutional on their face and as applied and therefore void.

141.    Plaintiffs are further entitled to a Declaratory Judgment declaring Orangetown's,
Newburgh's, and Poughkeepsie's selective and targeted enforcement of their zoning codes

unconstitutional as applied.

142.    Plaintiffs have no adequate remedy at law.

143.    Plaintiffs are entitled to an injunction staying the Supreme Court Actions in Rockland and Orange Counties under 28 USC § 2283.

144.    Plaintiffs are entitled to an injunction enjoining the Counties from enforcing the Executive Orders, and enjoining the Counties, Orangetown, Newburgh and Poughkeepsie from selectively enforcing their respective local codes.

**FOURTH CAUSE OF ACTION**
**(The Executive Orders, Closure Order and Selective Enforcement of the Zoning Codes Violate the 5th and 14th Amendments to the U.S. Constitution)**

145.    Plaintiffs repeat and reallege the above allegations as if fully set forth herein.

146.    For the reasons foregoing set forth above, the Executive Orders violate the Takings Clause of the 5th Amendment, as incorporated against the States under the 14th Amendment.

147.    Plaintiffs enjoy fundamental due process rights to ensure their private properly shall not be taken for public use without just compensation. This includes use of government power to deprive Plaintiffs of the economic benefits of their properties and agreements in connection therewith.

148.    Defendants' County Executive Orders are unconstitutional on their face, and as applied.

149.    Moreover, Rockland County's, Orangetown's, Newburgh's, and Poughkeepsie's selective and targeted enforcement of their local codes are unconstitutional as applied. This includes Rockland County's issuance of the Closure Order, which is blatantly unlawful, forcing the Armoni to shut down indefinitely.

150.    By reason of the foregoing, Plaintiffs have suffered traceable harm as a direct result

of Defendants' Executive Orders and enforcement of their local codes, both facially and as applied.

151.    Plaintiffs are entitled to a Declaratory Judgment declaring that the County Executive Orders, as well as the Closure Order and Defendants' selective and premeditated enforcement of their local codes, are unconstitutional on their face and as applied and therefore void.

152.    Plaintiffs have no adequate remedy at law.

153.    Plaintiffs are entitled to an injunction staying the Supreme Court Actions in Rockland and Orange Counties under 28 USC § 2283.

154.    Plaintiffs are entitled to an injunction enjoining the Counties from enforcing the Executive Orders, and enjoining the Counties, Orangetown, Newburgh and Poughkeepsie from selectively enforcing their respective local codes.

**FIFTH CAUSE OF ACTION**
**(The Executive Orders and Selected Enforcement of the Zoning Codes Are Preempted Under New York State Law)**

155.    Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

156.    The Executive Orders, as well as Defendants' selective and targeted enforcement of zoning codes, are preempted by New York State law.

157.    New York Municipal Home Rule Law § 10(i) prohibits local authorities from adopting local laws which are "inconsistent with the provisions of the [New York State] constitution or [are] inconsistent with any general law[.]" Thus, when a local law is inconsistent with the law passed by State of New York, it is preempted and invalid. *See Consolidated Edison Co. of N.Y., Inc. v. Town of Red Hook*, 60 N.Y.2d 99, 105 (1983).

158.    New York Executive Law § 296(2)(a) prohibits, *inter alia*, discrimination by any

place of public accommodation against any person because of their "national origin, citizenship, or immigration status[.]"

159.    The Executive Orders, on their face and as applied, specifically prohibit Plaintiffs from lawfully providing public accommodations to persons because of their "national origin, citizenship, or immigration status[.]"

160.    Similarly, Rockland County's, Orangetown's, Newburgh's, and Poughkeepsie's selected and targeted enforcement of their local codes, as applied, have been exclusively directed to prohibit Plaintiffs from lawfully providing public accommodations to persons because of their "national origin, citizenship, or immigration status[.]"

161.    Thus, the Executive Orders and the enforcement of the local codes directly conflict with New York Executive Law § 296(2)(a) and are invalid.

162.    By reason of the foregoing, Plaintiffs have suffered traceable harm as a direct result of Defendants' Executive Orders, both facially and as applied and are therefore void.

163.    Similarly, by reason of the foregoing, Plaintiffs have suffered a traceable harm as a direct result of Rockland County's, Orangetown's, Newburgh's, and Poughkeepsie's selective and targeted enforcement of their local codes.

164.    Plaintiffs are entitled to a Declaratory Judgment declaring that the County Executive Orders are in violation of New York law and are null and void.

165.    Plaintiffs have no adequate remedy at law.

166.    Plaintiffs are entitled to an injunction staying the Supreme Court Actions in Rockland and Orange Counties under 28 USC § 2283.

167.    Plaintiffs are entitled to an injunction enjoining the Counties from enforcing the Executive Orders, and enjoining the Counties, Orangetown, Newburgh and Poughkeepsie from

selectively enforcing their respective local codes.

## SIXTH CAUSE OF ACTION
### (The Executive Orders are Ultra Vires Under Executive Law Section 24)

168.    Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

169.    Each of the Executive Orders were issued pursuant to New York Executive Law Section 24, which permits local chief executives, only in the event of a "disaster, rioting, catastrophe, or similar public emergency," to "promulgate local emergency orders to protect life and property or to bring the emergency situation under control."

170.    As Plaintiffs have not acted, or threatened to act, in any manner that may lead to a "disaster, rioting, catastrophe, or similar public emergency," or in any manner threatening life or property, the Executive Orders have been promulgated in excess of and without authority as no emergency exists or is even threatened. Moreover, the Executive Orders are also not narrowly tailored to protect life or property but rather are blatantly discriminatory, unconstitutional and unlawfully impair the obligations and performance of valid lawful agreements.

171.    Accordingly, the Counties were without authority to issue the Executive Orders and they are therefore void.

172.    By reason of the foregoing, Plaintiffs have suffered traceable harm as a direct result of Defendants' Executive Orders, both facially and as applied.

173.    Plaintiffs are entitled to a Declaratory Judgment declaring that the County Executive Orders are null and void as they are ultra vires and in excess of the otherwise lawful authority of the Defendants' rights and powers.

174.    Plaintiffs have no adequate remedy at law.

175.    Plaintiffs are entitled to an injunction staying the Supreme Court Actions in

Rockland and Orange Counties under 28 USC § 2283.

176.    Plaintiffs are entitled to an injunction enjoining the Counties from enforcing the Executive Orders.

**SEVENTH CAUSE OF ACTION**
**(Damages Pursuant to 42 U.S.C. § 1983)**

177.    Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

178.    As set forth above, Defendants, both individually and collectively, have taken actions which violate Plaintiff's constitutional and civil rights, including without limitation those guaranteed by the Contracts Clause, the Fifth Amendment to the U.S. Constitution, and the Fourteenth Amendment to the U.S. Constitution.

179.    Each of Defendants has used their authority to establish formal policies and customs to effectuate unconstitutional laws and enforce existing laws in a way targeted to deprive Plaintiffs of their constitutional rights. This includes the Executive Orders and the targeted and premeditated enforcement of local codes.

180.    Each of Defendants directly participated in the establishment and enforcement of the aforementioned polices.

181.    The aforementioned policies and customs were not enacted or, as applicable, enforced, for a proper governmental purpose.

182.    Plaintiffs are entitled to damages pursuant to 42 U.S.C. § 1983 in an amount to be determined at trial.

## <u>REQUEST FOR RELIEF</u>

**WHEREFORE**, Plaintiffs demand judgment as follows:

a)      On the First Cause of Action, a Declaratory Judgment declaring that the Executive Orders violate the U.S. Constitution Contracts Clause, Article 1, Section 10, cl. 1 and an injunction staying the Supreme Court Actions in Rockland, Orange and Dutchess Counties under 28 USC § 2283 and an injunction under FRCP Rule 65;

b)      On the Second Cause of Action, a Declaratory Judgment declaring that the County Executive Orders are unconstitutional on their face and as applied under the Supremacy Clause and the U.S. Constitution and are therefore void; and an injunction staying the Supreme Court Actions in Rockland, Orange and Dutchess Counties under 28 USC § 2283 and further entitled to an injunction under FRCP Rule 65;

c)      On the Third Cause of Action, a Declaratory Judgment declaring that the County Executive Orders are unconstitutional on their face and as applied under the 14th Amendment to the U.S. Constitution and are therefore void; and an injunction staying the Supreme Court Actions in Rockland, Orange and Dutchess Counties under 28 USC § 2283 and further entitled to an injunction under FRCP Rule 65;

d)      On the Fourth Cause of Action, a Declaratory Judgment declaring that the Defendants' enactment and enforcement of local laws and orders, including the Closure Order, are unconstitutional on their face and as applied under the 5th and 14th Amendments to the U.S. Constitution and are therefore void; and an injunction staying the Supreme Court Actions in Rockland, Orange and Dutchess Counties under 28 USC § 2283 and further entitled to an injunction under FRCP Rule 65;

e)      On the Fifth Cause of Action, a Declaratory Judgment declaring that the County Executive Orders are in violation of New York laws New York Municipal Home Rule Law Section 10 and New York Executive Law Section 296(2)(a) and therefor are null and void, and an injunction staying the Supreme Court Actions in Rockland, Orange and Dutchess Counties under 28 USC § 2283 and further entitled to an injunction under FRCP Rule 65;

f)      On the Sixth Cause of Action, declaring that the Executive Orders are null and void as they are ultra vires and in excess of the otherwise lawful authority of the Defendants' rights and powers under Executive Law Section 24;

g)      On the Seventh Cause of Action, damages in an amount to be proven at trial under 42 U.S.C. § 1983;

h)      Plaintiff's costs and attorneys' fees in this action; and

i)    such other and further relief as this Court deems just and proper.

Dated: New York, New York
       May 21, 2023

                              PRYOR CASHMAN LLP

                              By: _____
                                  Todd E. Soloway, Esq.
                                  Perry M. Amsellem, Esq.
                                  Todd B. Marcus
                                  Itai Y. Raz, Esq.
                              7 Times Square
                              New York, New York 10036-6569
                              (212) 421-4100
                              *Attorneys for Plaintiffs*